UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
ROGELIO HEADLEY,                                             :

                                                            :

            Plaintiff,                                       :

                                                            :

            -against-                     **REPORT AND RECOMMENDATION**

                                                            :

SUPERINTENDENT BRIAN FISHER,                    06 Civ. 6331 (PAC) (KNF)
CORRECTIONAL OFFICER SIMPSON,             :
CORRECTIONAL OFFICER B. ELLIS,
CORRECTIONAL OFFICER R. BETHEA,            :
CORRECTIONAL OFFICER T. RIZZUTO,
CORRECTIONAL OFFICER K. HARRIS,            :
CORRECTIONAL OFFICER R. REYES,
CORRECTIONAL OFFICER K. BARRETT,           :

                     Defendants.                            :
-------------------------------------------------------------X
KEVIN NATHANIEL FOX
UNITED STATES MAGISTRATE JUDGE

TO THE HONORABLE PAUL A. CROTTY, UNITED STATES DISTRICT JUDGE

## I. INTRODUCTION

Rogelio Headley ("Headley" or "the plaintiff"), proceeding pro se, brings this action,

pursuant to 42 U.S.C. § 1983, for monetary damages, against Correction Officers Simpson

("Simpson") and B. Ellis ("Ellis") (collectively, "the defendants").[1]  The defendants filed

motions to dismiss the plaintiff's complaint, and, by an order dated May 7, 2008, all claims were

dismissed except the plaintiff's: (1) retaliation claims, against Simpson and Ellis; and (2)

Fourteenth Amendment Due Process claim, against Simpson. With regard to these surviving

claims, the plaintiff alleges, in his complaint, that, on April 29, 2004, Simpson refused to allow

---

[1] In his complaint, Headley also names as defendants, Brian Fisher, Superintendent of
Sing Sing Correctional Facility; and Correction Officers T. Rizzuto, K. Harris, R. Reyes, and K.
Barrett.  However, all claims against these defendants were dismissed, by an order of the court,
dated May 7, 2008.

him to use the bathhouse, Simpson "became aggressive," pushed Headley, and "told [Headley] that if [he was] still alive by the time [Simpson] comes back from vacation he will let [Headley] back out." Headley was placed in keep-lock confinement for 16 days, beginning April 29, 2004, and, during his keep-lock confinement, Headley did not receive meals, showers or recreation privileges. Headley alleged that he never received a misbehavior report while he was in keep-lock, and, although he requested "a sick call slip," he was refused it. Headley maintains that he was not given an opportunity to be heard, prior to being placed in keep-lock confinement. Headley alleges that Ellis retaliated against him, for filing a grievance against Simpson, by hitting him and stating "this is for C.O. Simpson."

Before the Court is the defendants' motion for summary judgment, made pursuant to Fed. R. Civ. P. 56. The plaintiff opposes the motion.

## II. BACKGROUND

The following facts are undisputed:

Headley is an inmate in the custody of the New York State Department of Correctional Services ("DOCS"), and, from April 29, 2004, to May 21, 2004, he was housed at Sing Sing Correctional Facility ("Sing Sing"). On April 29, 2004, Headley was housed in "B Block" at Sing Sing, on the "W gallery," in cell number W-62. On April 29, 2004, Headley wished to go to the bathhouse, and exited his cell. According to a log book, on April 29, 2004, Simpson wrote a misbehavior report against Headley. The Sing Sing Building B keep-lock log book entries, for April 29, 2004, to May 15, 2004, show that the plaintiff was placed in keep-lock status on the evening of April 29, 2004, and he was no longer in keep-lock status as of the afternoon of May 15, 2004. As a correction officer, Simpson did not have the authority to place Headley in keep-lock status– only a superior officer, such as a correction sergeant, has such authority. While

inmates are in keep-lock status, they are permitted to "go to recreation" and take showers, and are brought three meals daily, by other inmates, from the inmate cafeteria.  Corrections officers make "rounds in W-gallery, including rounds past inmates keeplocked in their cell, several times each day."  Headley did not go to recreation while he was in keep-lock status, and, according to a May 1, 2004 entry in the Sing Sing keep-lock log book, Headley was on "72 hour keep lock investigation," and was not permitted to go to keep-lock recreation.  Entries made in the "keeplock log book" on May 3, 5, and 10, 2004, indicate that "all keeplock showers were given out [on those dates]," and entries made on May 7 and 14, 2004, reveal that the inmate in cell W-62 had taken a shower.

The plaintiff disputes the defendants' claims that: (1) on April 29, 2004, the W gallery was not called for its "bathhouse run," and Simpson's determination, that Headley was "out of place" for requesting to go to the bathhouse, was correct– Headley maintains that he heard an announcement, over a loud speaker, for officers to "let out your bathhouse run," and Headley's cell was then opened; (2) Simpson did not use force on Headley; (3) Simpson had no control over placing Headley in keep-lock, since Headley contends Simpson knew that writing a misbehavior report would cause Headley to be confined in keep-lock; (4) Headley was offered, while in keep-lock status, the opportunity to go to recreation, have meals, and access to the showers; (5) the entries made in the Sing Sing logbooks are accurate.  Headley notes that he "has no control [over] what Officers write in the log-book."

Documentary evidence before the Court shows that Headley submitted a grievance –dated May 13, 2004, and stamped by "I.G.R.C." on May 20, 2004 – alleging:

> On or about April 29, 2004, I was going to the bathhouse, C.O. Simpson stop me asking me where I am going.  I told him the bathhouse run.  He told me no I was not going anywhere.  I told him that this [was] the 3rd time you refused to allow me to go to the bathhouse for no reason.  I ask to see a s[ergeant].  At that time a Sgt. was

on the flats.  He heard me asking for him.  He told me no to do what the officer wants.  At that time C.O. Simpson held me by my shirt and started pulling me to my cell.  He was screaming profanity at me.  Said officer than slapped me twice and push me to my cell.  Said officer tole me I am on the burn.  He assured me that if I start writ[]in g something bad [unreadable] happen to me.  He deprived me of everything for the past 14 days.  I have not receive[d] [a] misbeahvior report, nor ha[ve] I gone to any disciplinary hearing.

An investigation ensued, on the allegations Headley made in his grievance, and Simpson

responded that he did not have "any physical contact" with Headley, did not threaten to write him

up, and did not state that Headley was "on the burn" or that "anything bad would happen to him."

Simpson maintained that

> Headley was out of place and [was] asked several times to lock in.  Headley refused saying he was going to the bathhouse.  I told him bathhouse run hadn't been called for his gallery.  Still he refused to lock in.  I rasied my voice saying lock in to alert other officers that I was having a problem with an inmate.  As other officers came to my assistance inmate Headley still refused to lock in.  Sgt McNamara and Sgt Guadaeno both looking up from the flats told Headley to lock in.  Inmate Headley was escorted to his cell without incident.  Sgt. Guadaeno advised me to write Headley a ticket for out of place and disobey a direct order.  The ticket was given to Sgt McClain B Block Sgt. that night, along with Sgt. Guadaeno. . . .

After the investigation was complete, which included interviewing witnesses besides Simpson,

Headley's grievance was denied, based upon a finding that "no evidence [was] found to indicate

any misconduct on the part of Officer Simpson.  It appears that there was a mistake made with

regard to the grievant's hearing not being held in a timely manner, however, corrective action

was taken as soon as the mistake was found."  The form denying Headley's grievance against

Simpson also states that Simpson's misbehavior report was written and logged in the "review

log," and, "it was later found that the report was not ever heard and therefore, the grievant was

released when the oversight was realized."

A copy of another grievance by Headley, dated May 22, 2004, included allegations that,

after Headley met with visitors, he was strip searched in front of Ellis, who is a female officer,

and Ellis used profanity and made "foul comments [about Headley's] private parts."  After
Headley dressed, he claims seven officers surrounded him, and Ellis "smack[ed] [him] in the face
and told [him] to shut up [and] said tha[t's] what you get for writing up C.O. Simpson," and
"assured [Headley] that if [he] continue[d] to write sooner or later something bad is going to
happen to [Headley]."  After conducting an investigation, Headley's grievance was denied, based
upon a finding that "[t]here was no evidence found to indicate any improprieties by staff."  A
copy of Headley's deposition transcript has also been provided to the Court, and it contains
testimony detailing facts in conformity with the information in Headley's complaint and
grievances, as described above.

### III.  DISCUSSION

*Standard of Review for Summary Judgment*

Summary judgment may be granted in favor of the moving party "if the pleadings, the
discovery and disclosure materials on file, and any affidavits show that there is no genuine issue
as to any material fact and that the movant is entitled to judgment as a matter of law."  See Fed.
R. Civ. P. 56(c)(2); see also D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir. 1998),
cert. denied, 524 U.S. 911, 118 S. Ct. 2075 (1998); Salahuddin v. Goord, 467 F.3d 263, 272 (2d
Cir. 2006).  When considering a motion for summary judgment, "[t]he court must view the
evidence in the light most favorable to the party against whom summary judgment is sought and
must draw all reasonable inferences in his favor."  L.B. Foster Co. v. America Piles, Inc., 138
F.3d 81, 87 (2d Cir. 1998) (citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.
574, 587, 106 S. Ct. 1348, 1356 [1986]).

The moving party bears the burden of showing that no genuine issue of material fact
exists.  Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553 (1986).  "A fact is

'material' for these purposes if it 'might affect the outcome of the suit under the governing law....'  An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'"  Lovejoy-Wilson v. NOCO Motor Fuel, Inc., 263 F.3d 208, 212 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 [1986]).  Once the moving party has satisfied its burden, the non-moving party must come forward with "specific facts showing a genuine issue for trial."  Fed. R. Civ. P. 56(e)(2).

In order to defeat a motion for summary judgment, the non-moving party cannot merely rely upon the allegations contained in the pleadings that raise no more than "some metaphysical doubt as to the material facts."  Matsushita, 475 U.S. at 586, 106 S. Ct. at 1356.  "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment."  Anderson, 477 U.S. at 247-48, 106 S. Ct. at 2510 (emphasis omitted).  The non-moving party must offer "concrete evidence from which a reasonable juror could return a verdict in his favor."  Id. at 256, 106 S. Ct. at 2514.  Summary judgment should only be granted if no rational jury could find in favor of the non-moving party.  See Heilweil v. Mount Sinai Hospital, 32 F.3d 718, 721 (2d Cir. 1994).

The defendants contend they are entitled to summary judgment because: (1) Headley has failed to establish a claim of retaliation against Simpson and Ellis; (2) the plaintiff has not established a Fourteenth Amendment due process claim against Simpson; and (3) the defendants are shielded from liability to Headley, under the doctrine of qualified immunity.

Retaliation Claims

To establish a First Amendment retaliation claim, a plaintiff must demonstrate that: (1) his speech or conduct was constitutionally protected; (2) a defendant took an adverse action against him; and (3) a casual link between the protected speech or conduct and the adverse action

exists.  See Gill v. Pidlypchak, 389 F.3d 379, 380 (2d Cir. 2004).  An inmate asserting a First

Amendment retaliation claim must allege either that his speech was chilled or that he suffered

some other harm, including the adverse action of being placed in keep-lock confinement for a

period of weeks.  See id. at 383.  "Retaliation claims which are wholly conclusory may be

summarily dismissed absent any showing by the non-moving party of some specifics to support

such claim."  Ramsey v. Busch, 19 F. Supp. 2d 73, 88 (W.D.N.Y. 1998).

The plaintiff contends that Ellis retaliated against him, by "slapping" him and stating

"this is for C.O. Simpson," because Headley filed a grievance against Simpson.  Headley

maintains that Simpson placed him in keep-lock confinement, on April 29, 2004, in retaliation

for Headley's attempt to speak with Simpson's supervisor.

"The Supreme Court has described the right to petition government for redress of

grievances as among the most precious of the liberties safeguarded by the Bill of Rights. . . .  In

the prison context, [the Second Circuit Court of Appeals has] held that inmates must be

permit[ted] free and uninhibited access . . . to both *administrative and judicial* forums for the

purpose of seeking redress of grievances against state officers."  Franco v. Kelly, 854 F.2d 584,

589 (2d Cir. 1988) (internal quotations and citations omitted) (emphasis in original).  An inmate

has a constitutionally protected right to file grievances under the First Amendment, and prison

officials may not retaliate against an inmate for exercising that right.  See Colon v. Coughlin, 58

F.3d 865, 872 (2d Cir. 1995).

Rule 56.1(a) of the Local Rules of this court, provides that, "[u]pon any motion for

summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure, there shall be

annexed to the notice of motion a separate, short and concise statement . . . of the material facts

as to which the moving party contends there is no genuine issue to be tried.  Failure to submit

such a statement may constitute grounds for denial of the motion."  "A district court has broad discretion to determine whether to overlook a party's failure to comply with local court rules." Holtz v. Rockefeller & Co. Inc., 258 F.3d 62, 73 (2d Cir. 2001).  "[W]hile a court 'is not required to consider what the parties fail to point out' in their Local Rule 56.1 statements, it may in its discretion opt to 'conduct an assiduous review of the record' . . . ."  Id. (quoting Monahan v. New York City Dep't of Corr., 214 F.3d 275, 292 [2d Cir. 2000]).

While both parties have filed Local Rule 56.1 statements, the defendants failed to make any mention of Headley's retaliation claim made against Ellis.  Since the moving party bears the burden of showing that no genuine issue of material fact exists, Celotex Corp., 477 U.S. at 323, 106 S. Ct. at 2553, and Local Rule 56.1(a) requires the defendants to make a "short and concise statement . . . of the material facts as to which the moving party contends there is no genuine issue to be tried," the Court finds that the defendants have not met their burden of showing that no genuine issue of material fact exists, in relation to Headley's claim against Ellis.

Even if the Court were to exercise its "broad discretion to determine whether to overlook a party's failure to comply with local court rules," and "conduct an assiduous review of the record," Holtz, 258 F.3d at 73, the record before the Court militates in favor of denying summary judgment for Ellis on the retaliation claim.  The record contains the August 25, 2008 transcript of the minutes generated at Headley's deposition, during which Headley provides a detailed account of the facts supporting his retaliation claim against Ellis.  No sworn statement by Ellis, refuting the claim, was provided to the Court.  While copies of Headley's grievance against Ellis, and Ellis' response, have been provided to the Court, the defendants argue that Headley's grievance should be discounted, as self-serving.  However, it would appear that, based upon the same reasoning, Ellis' response to the grievance would also have to be discounted, as self-serving.

Therefore, based on the Court's review of the record, dismissing Headley's retaliation claim against Ellis is unwarranted, as this claim was neither refuted by the defendants through their Local Rule 56.1 statement, nor via any competent evidence upon which the Court may rely confidently.

Insofar as the defendants seek dismissal of Headley's retaliation claim against Simpson, the parties agree, in their respective Local Rule 56.1 statements, that no genuine issue of material fact exists respecting whether Simpson, as a correction officer, had the authority to place Headley in keep-lock status. Headley clarifies, in his Local Rule 56.1 statement, that Simpson knew that if he filed a disciplinary charge against Headley, a correction sergeant, authorized to place Headley in keep-lock status, would so punish him. Headley does not make "citation to evidence which would be admissible," to support this statement, as required by Local Rule 56.1(d). In addition, each contention stated in the defendants' Local Rule 56.1 statement is "deemed to be admitted ***for purposes of the motion*** unless ***specifically*** controverted by ***a corresponding numbered paragraph*** in the statement required to be served by the opposing party," see Local Rule 56.1(c) (emphasis in original). Since Headley has not offered "concrete evidence from which a reasonable juror could return a verdict in his favor," <u>Anderson</u>, 477 U.S. at 243, 256, 106 S. Ct. at 2507, 2514 (emphasis omitted), on the retaliation allegation he has asserted against Simpson, Headley has not overcome the defendants' showing that no genuine issue of material fact exists concerning his retaliation claim against Simpson, and they are entitled to judgment as a matter of law. Accordingly, it is reasonable and appropriate to grant the branch of the defendants' motion relating to Headley's retaliation claim against Simpson.

Due Process Claim Against Simpson

In order to establish a due process violation, a plaintiff must show that: (1) he possessed a liberty interest in not being confined in keeplock; and (2) the deprivation of that liberty interest occurred without due process of law.  See Bedoya v. Coughlin, 91 F.3d 349, 351-52 (2d Cir. 1996).  An inmate's liberty interest is implicated by prison discipline only if the discipline "imposes [an] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life."  Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300 (1995).  The duration and conditions of confinement are factors to be considered by a court when determining whether a confinement rises to the level of "atypical and severe hardship."  See Palmer v. Richards, 364 F.3d 60, 64 (2d Cir. 2004).

The plaintiff's due process claim is based upon his allegation that, when he was placed in keep-lock confinement for 16 days, after the April 29, 2004 incident, he was deprived of meals, showers and recreation, despite the fact that inmates in keep-lock confinement are entitled to these amenities.  Further, the plaintiff alleges he was neither provided a copy of the misbehavior report lodged against him, nor afforded a disciplinary hearing.

In their Local Rule 56.1 statement, the defendants make broad statements that inmates in keep-lock confinement are provided with meals, showers and recreation time.  The "log book" submitted in support of this contention is over 70 pages in length, and contains hand-written notations that are difficult, and, at times, impossible, to read.  No other support was proffered. Moreover, the defendants failed to make citation to specific log-book pages that they maintain support their contention that Headley took showers or was offered recreation while in keep-lock status.  Insofar as the defendants represent, in their Local Rule 56.1 statement, that "Plaintiff did get food from an inmate while he was keeplocked," they make citation to Headley's deposition

transcript, which makes clear that an inmate-friend gave him "little things" covertly, because Headley did not receive meals.  Headley's Local Rule 56.1 statement elaborates further upon this point, by describing the circumstances under which he secured food, when the defendants failed to feed him.  The record is silent on whether Simpson had any control over the conditions of Headley's keep-lock confinement.

After reviewing the materials submitted in support of the defendants' summary judgment motion, the Court finds that genuine issues of material fact exist in relation to whether Headley was deprived of meals, showers and recreation time, while he was in keep-lock confinement. Therefore, granting the defendants summary judgment, on Headley's due process claim, would not be reasonable and appropriate.[2]

## IV.  RECOMMENDATION

For the reasons set forth above, I recommend that the defendants' motion for summary judgment, Docket Entry No. 69, be granted with respect to the retaliation claim made against Simpson, and in all other respects, be denied.

## V.  FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report to file written objections.

---

[2] The analysis above applies equally to Headley's deprivation claim, under the Eighth Amendment.  When Headley's complaint is liberally construed, it appears he may be stating an Eighth Amendment claim, separate from his due process claim, that the deprivation of meals, showers and recreation time constituted cruel and unusual punishment.  See, e.g., Robles v. Coughlin, 725 F.2d 12, 15 (2d Cir. 1983) ("the Eighth Amendment prohibition against cruel and unusual punishment does require that prisoners be served nutritionally adequate food," and, "[w]hile no court has explicitly held that denial of food is a per se violation of a prisoner's Eighth Amendment rights, under certain circumstances a substantial deprivation of food may well be recognized as being of constitutional dimension").  However, since a material factual dispute exists over whether Headley was deprived of meals, showers and recreation time, it would not be appropriate for the court to grant summary judgment on the plaintiff's Eighth Amendment claim.

-11-

See also Fed. R. Civ. P. 6. Such objections, and any responses to objections, shall be filed with the Clerk of the Court, with courtesy copies delivered to the chambers of the Honorable Paul A. Crotty, 500 Pearl Street, Room 735, New York, New York, 10007, and to the chambers of the undersigned, 40 Foley Square, Room 540, New York, New York, 10007. Any requests for an extension of time for filing objections must be directed to Judge Crotty. FAILURE TO FILE OBJECTIONS WITHIN FOURTEEN (14) DAYS WILL RESULT IN A WAIVER OF OBJECTIONS AND WILL PRECLUDE APPELLATE REVIEW. See Thomas v. Arn, 474 U.S. 140 (1985); IUE AFL-CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1054 (2d Cir. 1993); Frank v. Johnson, 968 F.2d 298, 300 (2d Cir. 1992); Wesolek v. Canadair Ltd., 838 F.2d 55, 57-59 (2d Cir. 1988); McCarthy v. Manson, 714 F.2d 234, 237-38 (2d Cir. 1983).

Dated: New York, New York         Respectfully submitted,
     April 7, 2010

Copies mailed to:

                                       KEVIN NATHANIEL FOX
                                       UNITED STATES MAGISTRATE JUDGE

Rogelio Headley
Inna Reznik, Esq.